UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:23-CV-115-CRS

KEVIN BENNETT                                                     PLAINTIFF

v.

DAVID GARY, *et al.*                                       DEFENDANTS

### MEMORANDUM OPINION & ORDER

On October 10, 2023, Plaintiff Kevin Bennett filed this *pro se* 42 U.S.C. § 1983 prisoner civil rights action. [DN 1]. This matter is before the court on initial review of Bennett's Complaint pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the court will dismiss Bennett's Complaint in its entirety.

### I.

Bennett is "a federal pretrial detainee[] housed at the Grayson County Detention Center" ("GCDC") who alleges "violations of his constitutional rights" based on allegations of "excessive force," "inadequate medical care," and retaliation. [Compl., DN 1 at ¶¶ 1, 109]. Bennett has sued GCDC Captain David Gary, Chief Deputy Jason Vanmeter, Captain Krysta Randolph, Deputy Tony, Officer Gavin Newton, Medical Director Gary Skaggs, Nurse Janice, and Medical Technicians Stephine, Miranda, Casey Tarrance, and Rachel Decker. Bennett seeks compensatory and punitive damages against the defendants. [*Id.* at pg. 11]. He does not seek injunctive relief. [*Id.*].

Bennett's Complaint chronicles three alleged incidents that occurred on three different days. The facts as alleged in Bennett's Complaint are as follows:

*March 9, 2022*

Bennett alleges that on March 9, 2022 he covered up the camera in his cell multiple times "to get the lead captain or the Chief Deputy back to his cell to talk to one or both of them." [DN 1 at ¶¶ 7–11]. Bennett was directed to uncover his camera multiple times by Captain Gary. [*Id.* at ¶¶ 8, 17]. Captain Gary advised Bennett multiple times that he could not speak with the lead captain or chief deputy. [*Id.* at ¶¶ 10, 19]. Also, Captain Gary allegedly advised Bennett that he would "beat [Bennett's] ass" if he covered the cell camera again. [*Id.* at ¶ 17].

Less than a half hour later, Bennett covered his cell camera again. [*Id.* at ¶ 20]. He uncovered it once he saw Captain Gary approaching his cell. [*Id.* at ¶ 21]. Allegedly, Captain Gary "never said a word, he just opened the tray slot to Plaintiff [sic] cell, and pulled out his can of O.C. spray, and sprayed [Bennett], hitting him in his head, face, and neck area." [*Id.* at ¶ 23]. Then, Bennett alleges Captain Gary ordered him to "[g]et the fuck on the ground, if you don't I will roll this door and beat the shit out of you." [*Id.* at ¶ 26]. Bennett complied. [*Id.* at ¶ 27].

After, Bennett requested a shower to wash the O.C. spray off and to be seen by medical staff, but Captain Gary denied Bennett's requests. [*Id.* at ¶¶ 30–31]. While being escorted back to his cell, Bennett heard the voice of Chief Deputy Jason Vanmeter. [*Id.* at ¶ 35]. Bennett renewed his requests for permission to shower and to be seen by medical staff to Chief Deputy Vanmeter, but Chief Deputy Vanmeter denied the requests and told Bennett "that he would sit in the O.C. spray for keep [sic] doing dumb shit in his jail[.]" [*Id.* at ¶¶ 37–38]. Once back in his cell, Bennett renewed his requests to other officers, but they all advised him that Captain Gary said "no." [*Id.* at ¶ 45]. Bennett alleges he did not file a grievance because he was transferred "from the Grayson County Detention Center the same day these events . . . happened." [*Id.* at ¶ 51].

*September 3, 2023*

Bennett alleges that on September 3, 2023 he (1) advised "med tech Stephine that he was light headed" and "his chest hurts" and (2) requested his vitals be checked. [DN 1 at ¶ 53]. Allegedly, Medical Technician Stephine advised that "she wasn't going to do [Bennett's] vitals because of what Defendant Skaggs had order [sic] medical staff not to do." [*Id.* at ¶ 54]. Medical Director Skaggs's order, Bennett alleges, directed female "nurses and all med techs not to pass [Bennett] medication, or give [Bennett] any type of medical care," as he is only "to see a male nurse for his medical needs." [*Id.* at ¶ 105]. In response to Medical Technician Stephine, Bennett stated that he was "in excruciating pain and he's having trouble breathing." [*Id.* at ¶ 55]. Medical Technician Stephine stated that "she heard what [Bennett] use[d] to do to the other med techs when he was housed at the Grayson County Detention Center last time he was there, and that she didn't care about his chest pain or medical needs[.]" [*Id.* at ¶ 56].

After Bennett's interaction with Medical Technician Stephine, he completed a medical request form and handed it off to a deputy who in turn delivered it to Nurse Janice. [*Id.* at ¶ 57–58]. However, Bennett alleges that the deputy reported back that Nurse Janice would not see Bennett. [*Id.* at ¶ 59]. Instead, Bennett was to be seen "the next morning by Defendant Gary because he's a male nurse." [*Id.*]. Later, Bennett advised additional officers of his request for medical attention, and they similarly advised Bennett that Nurse Janice refused to see him. [*Id.* at ¶¶ 60–61].

Thereafter, Bennett was offered a shower and he took one. [*Id.* at ¶ 62]. Upon returning from the shower, Bennett "passed out and hit the floor" and was "found unresponsive by deputies." [*Id.* at ¶¶ 63–64]. They helped Bennett "regain consciousness" and took him to "medical." [*Id.* at ¶ 65]. There, Nurse Janice checked Bennett's vitals and determined that they were "okay."

[*Id.* at ¶ 66]. Bennett, however, alleges he told Nurse Janice that he saw his "heart and O.2. level, and it wasn't normal." [*Id.* at ¶ 67]. Nurse Janice allegedly responded that Bennett does not "know anything about medical, and if it wasn't for these officers making her see him she wouldn't have seen him for anything, so" Bennett "was lucky to get his vitals checked." [*Id.* at ¶ 68]. Bennett did not allege what his oxygen and "heart" levels were, nor did he allege how and to what extent they deviated from his "normal" levels. *See* [*id.* at ¶¶ 66–68]. Bennett filed a grievance. *See* [Grievances, DN 1-1].

### September 7, 2023

Bennett alleges that on September 7, 2023 he asked Officer Gavin Newton through his cell camera if he could be seen by medical staff because he "was having real bad chest pain[] and needed to see medical to have his vitals checked." [DN 1 at ¶ 73]. Officer Newton did not respond to Bennett's request. [*Id.* at ¶ 74]. Thereafter, Bennett "repeatedly kept waving at the camera to get Defendant Newton [sic] attention for over an hour. All Defendant Newton did was kept coming over the speaker inside Plaintiff [sic] cell and said, 'You can wave your hand at your camera all you want, I'm not getting medical for you.'" [*Id.* at ¶¶ 75–76].

Later, Deputy Tony conducted a security round where Bennett was housed. Bennett told Deputy Tony that he would like his vitals checked. [*Id.* at ¶ 79]. Deputy Tony "laughed at [Bennett] and stated[,] 'we don't care about your chest pain you're not seeing medical.'" [*Id.* at ¶ 80].

Next, Captain Krysta Randolph, who is the "lead captain" on second shift, conducted a security round where Bennett was housed. [*Id.* at ¶ 81]. Bennett told her that he wanted his vitals checked and that he was in pain and experiencing trouble breathing. [*Id.* at ¶ 82]. Captain Randolph told Bennett, "No, you [sic] not seeing medical because I'm refusing you to see them." [*Id.* at ¶ 83]. When Bennett asked Captain Randolph why is "she going to refuse Plaintiff a serious medical

attention," she replied, "I was a med tech before I became a captain, so I could check your vitals, but I don't care about you [sic] chest pain, so stop harassing my officers." [*Id.* at ¶¶ 84–85].

After Captain Randolph left, Bennett heard Medical Technicians Miranda, Casey Tarrance, and Rachel Decker conversing nearby. [*Id.* at ¶ 87]. He asked them to check his vitals "because he was having chest pain and could barely breathe." [*Id.* at ¶ 89]. Allegedly, they "said no they wasn't [sic] seeing [him] for chest pain." [*Id.* at ¶ 90].

Bennett alleges he was found unconscious in his cell two hours after Bennett first requested medical attention. [*Id.* at ¶ 91]. An officer by the name of Lee — who is not sued in this action — "did some type of chest compression on [Bennett's] chest for him to regain conscious[ness]." [*Id.* at ¶ 92]. Once awake, Bennett requested to be seen by medical staff but Captain Randolph "told [Bennett] no he wouldn't be seen by medical." [*Id.* at ¶ 93].

Thereafter, Bennett asked Medical Technician Tarrance "if she could check his vitals due to him passing out and being found unresponsive." [*Id.* at ¶ 96]. Tarrance allegedly replied, "all the shit you did and said to me last time you was here, I could care less if you need medical attention." [*Id.* at ¶ 97]. Bennett did, however, receive medical attention from Nurse Janice. [*Id.* at ¶ 100]. Bennett filed a grievance. *See* [Grievances, DN 1-1].

## II.

Because Bennett is a pretrial detainee seeking relief against governmental entities, officers, and/or employees, the court must initially review the instant action. *See* 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds*, *Jones v. Bock*, 549 U.S. 199, 203 (2007). Upon review, the court must dismiss a case at any time if the court determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b)(1), (2). When screening the Complaint, the court must construe it in the light most favorable to Bennett and accept well-pleaded allegations as true. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010). And while a reviewing court liberally construes *pro se* pleadings, *see id.*; *Boag v. McDonald*, 454 U.S. 364, 365 (1982), a complaint must include "enough facts to state a claim to relief that is plausible on its face" to avoid dismissal, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III.

Before reaching the merits of Bennett's § 1983 claims, the court will consider other deficiencies.

First, some of Bennett's claims are untimely. 42 U.S.C. § 1983 does not provide a statute of limitations, so federal courts borrow the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275–80 (1985). In Kentucky, § 1983 actions are limited by the one-year statute of limitations found in KRS § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that [sic] a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 183.

The factual allegations underpinning Bennett's claims against Captain Gary and Chief Deputy Vanmeter allegedly occurred on March 9, 2022. [DN 1 at ¶¶ 7–52]. But Bennett did not place his Complaint in the prison mailing system until October 10, 2023 — 580 days later. [*Id.* at pg. 11]; *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) ("[A] pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court."). What is more, Bennett conceded that he did not file a grievance related to this event, so the statute

of limitations would not have been tolled by that administrative process. [DN 1 at ¶ 51] (acknowledging same). Thus, on the face of the Complaint, Bennett's § 1983 claims against Captain Gary and Chief Deputy Vanmeter are untimely as he did not file his Complaint within one year of the alleged event. Accordingly, his claims against Captain Gary and Deputy Vanmeter will be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

Second, Bennett sued all the defendants in their official capacities but seeks only monetary relief. Monetary relief, however, is unavailable from state government officials sued in their official capacities because they are absolutely immune from § 1983 liability under the Eleventh Amendment to the United States Constitution. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (concluding that a state, its agencies, and its officials sued in their official capacities are not persons who may be sued for damages under § 1983); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). For this reason, all Bennett's official capacity claims will be dismissed for seeking monetary relief from defendants who are immune from such relief. 28 U.S.C. § 1915A(b)(2). Next, the court will review Bennett's remaining individual capacity claims.

### IV.

Bennett's Complaint raises § 1983 deliberate indifference medical claims against Captain Randolph, Deputy Tony, Officer Newton, Medical Director Skaggs, Nurse Janice, and Medical Technicians Stephine, Miranda, Tarrance, and Decker, and a § 1983 retaliation claim against Medical Director Skaggs. Two elements are required to state a claim under § 1983. "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United

States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A.

When a pretrial detainee asserts a claim of denial of medical treatment, the claim is analyzed under the Fourteenth Amendment because the Due Process Clause "forbids holding pretrial detainees in conditions that 'amount to punishment.'" *Kingsley v. Hendrickson*, 576 U.S. 389, 405 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566–67 (6th Cir. 2020) (citing *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018)). To state a cognizable § 1983 deliberate indifference to medical needs claim, a pretrial detainee must plead sufficient facts to demonstrate that (1) he had an objectively serious medical need; and (2) that the defendant's action, or lack of action, "was intentional (not accidental) and the defendant either (a) acted intentionally to ignore [the detainee's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [the detainee.]" *Mercer v. Athens Cnty.*, 72 F.4th 152, 161–62 (6th Cir. 2023) (citing *Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021)). An objectively serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Greene v. Crawford Cnty., Mich.*, 22 F.4th 593, 607 (6th Cir. 2022).

Bennett's attempt to plead § 1983 deliberate indifference claims falls short on the objective element. Bennett alleges that on both September 3 and 7, he complained of chest pain and difficulty breathing. *See, e.g.*, [DN 1 at ¶¶ 53, 55, 73]. However, nowhere in Bennett's 121-paragraph Complaint does he plead that a physician diagnosed him with an objectively serious medical need

that requires treatment, *Greene*, 22 F.4th at 607, nor that he passed out *because of* his complained-of symptoms. These are critical deficiencies, because Bennett could have passed out for any number of reasons unrelated to an objective medical need. *See* [DN 1 at ¶ 63] (alleging that Bennett passed out on September 3 after taking a shower, four hours after first complaining of symptoms); [*id.* at ¶ 91] (alleging that Bennett passed out on September 7 two hours after first complaining of symptoms).

Additionally, Bennett did not plead that his complained-of symptoms were "so obvious that even a lay person would easily recognize" the necessity for treatment. *Greene*, 22 F.4th at 607. In truth, Bennett's factual allegations support the opposite conclusion: Bennett alleges that he (1) maintained conversations with various GCDC officials, [*id.* at ¶¶ 53, 55, 60, 62], (2) was physically able to wave at his cell camera for over an hour, [*id.* at ¶ 75], and (3) did not pass out until hours after initially complaining of his alleged symptoms, [*id.* at ¶¶ 53, 63, 71, 91].

Moreover, Bennett received medical treatment after he passed out on September 3 and 7. According to Bennett, his vitals were checked by Nurse Janice after he passed out on September 3, and she determined that Bennett's vital signs were "okay." [*Id.* at ¶ 66]. Additionally, Bennett alleges that he received medical treatment from Nurse Janice on September 7 after he passed out in his cell, though he does not detail what the treatment entailed. [*Id.* at ¶ 100] (alleging that Bennett was "seen by Nurse Janice at approximately 12:30 A.M."). Although Bennett alleges that he did not receive immediate treatment on September 7, [*Id.* at ¶ 99], he does not allege that the delay in receiving treatment resulted in a detrimental effect, *see Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (when complaining "that delay in medical treatment rose to a constitutional violation," the plaintiff must "establish the detrimental effect of the delay in medical

treatment to succeed"). Consequently, even if Bennett intended to raise a deliberate indifference claim based on a delay, rather than denial, of medical care, his Complaint remains deficient.

Thus, for failure to plead an objectively serious medical need, Bennett fails to raise a cognizable § 1983 deliberate indifference claim against the remaining individual defendants. As such, the claims must be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

**B.**

Lastly, Bennett raises a § 1983 First Amendment retaliation claim against Medical Director Skaggs. To survive initial review, Bennett must "plead the following three elements: '(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Jones v. Louisville/Jefferson Cnty. Metro Gov't*, 482 F. Supp. 3d 584, 592 (W.D. Ky. 2020) (quoting *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012)).

Bennett's attempt to plead a § 1983 retaliation claim fails on every element. The facts as alleged in the Complaint reflect that Medical Director Skaggs entered an order which precluded Bennett from receiving medical treatment from female medical staff members except in emergencies based on Skaggs's belief that Bennett had previously assaulted a female medical staff member. [DN 1 at ¶¶ 105–106, 109, 111]. Bennett characterizes the issuance of that order as retaliatory. [*Id.* at ¶ 109] ("Defendant Skaggs is retaliating against Plaintiff for allegation that he was accused of when he was housed at the G.C.D.C. from 9-13-21 to 3-9-22."). Bennett does not allege that he suffered retaliation in response to his engaging in constitutionally protected conduct. Rather, Bennett alleges that Medical Director Skaggs's retaliatory conduct, banning medical

treatment from women, resulted from his belief that Bennett previously assaulted a female medical staff member. [*Id.*]. Consequently, the facts as pleaded do not show that Medical Director Skaggs acted in response to constitutionally protected conduct. Thus, Bennett's First Amendment retaliation claim against Medical Director Skaggs fails as a matter of law. *Jones*, 482 F. Supp. 3d at 592; 28 U.S.C. § 1915A(b)(1).

**V.**

Bennett's Complaint will be dismissed in its entirety for (1) failing to state a claim upon which relief may be granted and (2) seeking monetary relief from defendants who are immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). A separate Order will be entered contemporaneously with this Memorandum Opinion.

Finally, Bennett was previously ordered to pay the statutory filing fee of **$350.00** under an installment plan. [DN 6]. Although this action will be dismissed, Bennett remains obligated to pay the filing fee in full. *McGore*, 114 F.3d at 605 ("We conclude that by *filing* the complaint or notice of appeal, the prisoner waives any objection to the fee assessment by the district court.") (emphasis added). Accordingly, the court's prior **Order [DN 6] directing the Grayson County Detention Center** to send to the Clerk of Court monthly payments from Bennett's trust account each time the amount in the account exceeds $10.00 until the statutory filing fee of $350.00 is paid in full **remains in full effect. IT IS SO ORDERED.**

December 7, 2023

Charles R. Simpson III, Senior Judge
United States District Court

cc: Plaintiff, *pro se*
    Grayson County Detention Center